**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NANCY HADDAD,

      Plaintiff,

      v.

CITY COLLEGES OF CHICAGO,

      Defendant.

No. 10 CV 6528

Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case brought under 42 U.S.C. § 1981, Title VII, and the Family and Medical Leave Act ("FMLA"). Plaintiff alleges that Defendant paid her a lower salary, assigned her a disproportionate amount of work, and ultimately terminated her employment on account of her race. Plaintiff also alleges that Defendant retaliated against her for complaining about discriminatory treatment and taking medical leave, both of which are protected activities under federal law. Defendant moves for summary judgment on all counts, arguing that Plaintiff cannot make a *prima facie* showing of race discrimination or retaliation, or show that its proffered non-discriminatory explanation for her termination—budgetary cuts—is pretextual. For the following reasons Defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff is an African-American woman who began working for the Washburne Culinary Institute ("WCI") in August 2006. WCI is a division of Defendant City Colleges of Chicago that provides instruction in the culinary arts. WCI also provides catering services and operates two restaurants in Chicago, the Parrot Cage and Sikia. At all times relevant to this suit, William

Reynolds ("Reynolds"), a Caucasian male, served as Provost of WCI.  In this position, Reynolds was responsible for WCI's overall management and operations.

In August 2006, WCI hired Plaintiff to serve as General Manager of Dining Services. Her starting salary was $50,000.  Despite her title, Plaintiff primarily functioned as a Restaurant Manager at the Parrot Cage, where she was responsible for overall operations of the restaurant. As manager of the Parrot Cage, Plaintiff worked Tuesday through Saturday from approximately 2:00 pm until the restaurant closed, usually between 12:00 a.m. and 1:00 a.m.  She reported to Business Manager Allen Illiac ("Illiac") as well as Reynolds.

In February 2007, Plaintiff discovered through a public Board Report that another General Manager of Dining Services, Christine Gallagher (Caucasian), was being paid over $7,000 more than Plaintiff.  Shortly thereafter, Plaintiff complained to Reynolds about the pay disparity.  Reynolds told Plaintiff that he would discuss it with her at a later time.  Plaintiff alleges that shortly after this meeting, Reynolds began treating her in a "nasty," mean-spirited manner.  Plaintiff also claims that Reynolds significantly increased her duties and responsibilities in May 2007 by assigning her catering duties previously performed by Gallagher, who resigned the same moth because she was overwhelmed by her workload.

In September 2007, Plaintiff told Illiac that she wanted to work more daytime hours so that she could be at home in the evenings with her son.[1]  In response to her request, Plaintiff was moved to a liaison role between Defendant's restaurant and catering departments.  For the first three months following her transition, Plaintiff maintained some of her management responsibilities at the Parrot Cage.

In January 2008, Plaintiff told Reynolds and Emma Ortiz ("Ortiz"), who replaced Illiac as Business Manager in late 2007, that she was under significant stress as a result of her new

---

[1] Defendant claims Plaintiff made this request to Reynolds.

responsibilities and needed help.  In February 2008, Plaintiff's salary was increased to $52,900.

In March 2008, Reynolds hired Yolanda Comanse ("Comanse ") (Hispanic) to "split the catering

manager role" with Plaintiff.  DSOF ¶ 13.  Comanse's official title was "General Manager of

Dining Services" and she began with a starting salary of $55,000.

On April 11, 2008, Plaintiff complained to Ortiz about the fact that Comanse was paid

more than her, and told Ortiz that she believed Reynolds treated her poorly because of her race.

On April 15, 2008, Plaintiff met with Ortiz and Reynolds and again complained that Comanse

was making roughly $2200 more than Plaintiff.  Plaintiff also expressed her belief that Gallagher

and Comanse were unqualified for their positions, or, at any rate, were not as qualified as

Plaintiff.  Reynolds told Plaintiff he was unaware of the salary disparity and that Plaintiff's

salary would be increased by $2,200 "effective immediately."  Plaintiff was also transferred out

of her liaison role into the position of Catering Manager.  As part of this move, Ortiz agreed to

assume some of Plaintiff's administrative duties to reduce Plaintiff's workload.  In a letter dated

April 15, 2008, Defendant informed Plaintiff that her salary would increase to $55,000.

The record is not clear on the exact date but it appears that in July 2008 Plaintiff's salary

was increased to $54,746.  At some point between March and October 2008, Comanse's initial

salary of $55,000 was increased to $57,200.

In August 2008, Plaintiff contacted Rene Alvarado ("Alvarado") in City Colleges Human

Resources Department and told him that she felt she was being treated unfairly on account of her

race.  Alvarado suggested that she contact Danielle Kerry ("Kerry"), an attorney in City Colleges

Human Resources Office regarding her complaint.  Shortly thereafter, Plaintiff called Kerry and

told her she felt she was being treated less favorably than her non-African American coworkers

with regard to her workload and pay.

On September 10, 2008, Plaintiff began a six-week FMLA leave for a scheduled medical procedure.  Plaintiff claims that during her FMLA leave, Reynolds called her and requested that she "bring him up to speed on all catered events."  Plaintiff says she told Reynolds that Comanse could bring him up to speed by logging into Plaintiff's computer account at work, but that Reynolds was not satisfied with this answer.[2]  After this conversation, Plaintiff began working from home during her FMLA leave.  On September 23, 2008, Plaintiff filed a charge of discrimination against City Colleges alleging race discrimination.

On October 3, 2008, Plaintiff received an email from Ortiz which stated in relevant part, "It is not our intention to have you work from home during this time.  That said, effective immediately, please refer all business related e-mails and phone calls to . . . my attention . . . Please write an away message on your voicemail doing the same . . ."  Despite this email, Plaintiff says she continued to work from home during FMLA leave because, in Plaintiff's words, "I am a responsible person, I am not going to drop the ball."  (Pl. Dep. at 116:20-21).

Plaintiff returned to work in late October 2008.  On November 17, 2008, Kerry met with Plaintiff to discuss her race discrimination claim.  At the meeting, Kerry asked Plaintiff, "[I]f we pay you the money that you were promised, will this all go away?"  It does not appear that Plaintiff gave an answer to this question.  Instead, she asked Kerry what money she was referring to and who would follow up with Plaintiff about it.  It is not clear from the record how Kerry responded to this.  Kerry then asked Plaintiff about her relationship with Mr. Reynolds and Plaintiff became emotional.  Kerry then stated, "I don't want to hold you.  Aren't you supposed to meet with Mr. Reynolds after this?"

Plaintiff left Kerry's office and proceeded to her meeting with Reynolds.  Reynolds and

---

[2] Defendant denies that Reynolds contacted Plaintiff during her medical leave for work purposes other than to respond to her inquiries.

Alvarado were in Reynolds's office when Plaintiff arrived. Reynolds asked Plaintiff if she had just come from the district office (where Kerry worked) and Plaintiff replied that she had. Plaintiff claims that Reynolds then grinned at her and stated, "[w]e are having some budgetary issues. So we are going to have to eliminate your position effective immediately." Plaintiff then turned over her ID and keys to Alvarado and went down to her office to empty out her desk.

Shortly after Plaintiff's termination, Defendant sent her a check in the amount of $1031.59. Defendant asserts that the check represented the difference between Plaintiff's salary at the time of her termination and the salary of $57,200.00 from the period of July 2008 to November 2008, which Defendant claims was approved but never processed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Once the moving party has met this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Hanson v. Caterpillar*, 688 F.3d 816, 818 (7th Cir. 2012).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Stewart v. McGinnis,* 5 F.3d 1031, 1033 (7th Cir. 1993). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

## III.   ANALYSIS

### A.  Race Discrimination

I begin with Plaintiff's race discrimination claims brought under Title VII and 42 U.S.C. § 1981.[3]  Plaintiff has three separate theories of race discrimination: 1) her salary was lower than other non-African American managers; 2) she was assigned more work than other non-African American managers; and 3) she was terminated on account of her race.

Plaintiff has two options for establishing her discrimination claims.  First, she can present direct evidence of discrimination.  Direct evidence is "evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption."  *Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004).  Direct evidence comes in two forms.  The first form is an outright admission by the decisionmaker that the challenged action was undertaken with discriminatory intent.  *Id.*  The second form consists of a "convincing mosaic" of circumstantial evidence that points directly to a discriminatory intent.  *Id.*

Plaintiff may also establish her discrimination claims indirectly under the burden-shifting analysis prescribed by *McDonnell Douglass*.  To make a *prima facie* showing under this indirect method, Plaintiff must show 1) that she belongs to a protected class; 2) her performance met her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) similarly situated others not in her protected class received more favorable treatment.  *Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 744 (7th Cir. 2002).  If plaintiff can make this showing,

---

[3] The same *prima facie* requirements apply to Title VII and § 1981 discrimination claims.  *Fane v. Locke Reynolds, LLP*, 480 U.S. 534, 538 (7th Cir. 2007).

the burden shifts to the defendant to put forth a non-discriminatory reason for the challenged

action.  If the Defendant does this, the burden shifts back to the plaintiff to show that

Defendant's non-discriminatory reason is pretextual.  *Id*.

Turning first to Plaintiff's claims of unequal pay, it is undisputed that Plaintiff meets the

first three prongs under the *McDonnell Douglas* analysis.  The question is whether she meets the

fourth prong by demonstrating that Gallagher and Comanse were similarly situated.  The

similarly situated inquiry is "a flexible [test] that considers all relevant factors."  *Humphries v.*

*CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (internal quotations omitted).  To meet the

test, "an employee need not show complete identity in comparing [her]self to the better treated

employee, but [she] must show substantial similarity."  *Id*.

Defendant argues that Plaintiff cannot make a *prima facie* showing of pay disparity

because she cannot show that Gallagher and Comanse were similarly situated to her.  My

analysis here is complicated by the fact that Defendant appears to have used job titles very

loosely—employees who shared the same formal title often performed very different roles at

WCI.  Additionally, manager responsibilities appear to have been fluid and overlapping based on

day-to-day needs.  For example, while the parties agree that Plaintiff was primarily responsible

for planning catering events and Comanse was responsible for executing them, this was by no

means a rigid arrangement.  There is evidence in the record that Plaintiff also had substantial

involvement with executing certain events.

The parties disagree about the similarity of functions performed by Plaintiff, Comanse

and Gallagher, and there is little by way of hard facts on this outside of deposition testimony.

Viewing these facts in the light most favorable for the Plaintiff, a reasonable jury could find that

she was similarly situated to both Gallagher and Comanse.  There are two main bases for this

determination. First, Defendant itself states that Comanse was brought in to "split the catering manager role" after Plaintiff complained of being overwhelmed by her workload. DSOF ¶ 13. While this fact may cut in Defendant's favor when it comes to Plaintiff's disproportionate workload claim, it cuts against Defendant for the pay disparity claim. Why would Comanse be brought in at a higher salary than Plaintiff when she is assuming only a portion of the same duties that Plaintiff had performed for months? Defendant suggests that Comanse was more qualified than Plaintiff, but I am unconvinced that the standard for summary judgment has been met. Comanse appears to have had more experience than Plaintiff, but Plaintiff still had considerable experience of her own and held an Associate Degree in culinary arts, which Comanse lacked. Defendant listed both experience and an Associate degree under its requisite qualifications for the manager position. In short, a reasonable jury could find that Comanse and Plaintiff were similarly situated in terms of qualifications.

Second, Defendant's argument that Plaintiff is not similarly situated to Gallagher is based entirely on Plaintiff's duties as manager at the Parrot Cage restaurant. Defendant does not account for the fact that after Gallagher left WCI, Plaintiff took on many of Gallagher's former duties—booking and overseeing catering jobs—without receiving an equivalent pay raise.[4] Again, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find she was similarly situated to Gallagher based on her assumption of catering duties in May 2007. Defendant does not offer any non-discriminatory reason for the pay disparity so that is where my analysis ends. Plaintiff's race discrimination claim based on pay disparity survives.

I turn next to Plaintiff's unequal workload theory of race discrimination. This theory

---

[4] There is evidence that in September 2008 Ortiz submitted a personnel action form requesting an increase in Plaintiff's salary from $54,746 to $57,200, which was denied by the district office. Defendant represents that the $1031.59 it sent Plaintiff after her termination represents the difference between the two salaries from July to November 2008. However, Defendant initially told Plaintiff the payment represented a cost of living increase. Even if Defendant is right that the check represented the difference in salaries, it does not render Plaintiff's pay disparity claims moot—there is still the issue of pre-July 2008 pay disparities.

fails for two reasons. First, Plaintiff has not produced any evidence from which a jury could reasonably conclude her workload was heavier than that of other managers. Plaintiff stresses her subjective belief that her workload was heavier, but this is not enough. *Fane v. Locke Reynolds*, 480 F.3d 534, 538-39 (7th Cir. 2007). The evidence suggests 1) the workload was heavy for all managers (Plaintiff herself claims that Gallagher quit because the workload was overwhelming); 2) Defendant accommodated Plaintiff whenever she complained about the workload (e.g. Defendant moved Plaintiff out of her management position at the Parrot Cage when she requested daytime hours; Comanse was hired in March 2008 to split Plaintiff's duties as Catering Manager; and Ortiz assumed Plaintiff's administrative duties after the April 15, 2008 meeting).

Second, harder work assignments alone do not constitute an adverse employment action. *Id.* Plaintiff has to show that discrimination motivated work distributions, and the evidence simply does not bear this out. For example, Plaintiff claims that Reynolds increased her workload after she complained about the disparity in pay between her and Gallagher. But the evidence shows this was done in part to accommodate Plaintiff's requested transition to day-time hours and Plaintiff was required to cover her new liaison responsibilities as well as manage the Parrot Cage only until her replacement at the restaurant was brought up to speed. Plaintiff has not met her burden with regards to the unequal workload theory of race discrimination.

Plaintiff's final theory of discrimination is that she was terminated on account of her race. Plaintiff elects to proceed on this theory under the direct method of proof but there is simply not enough in the record to make up a "convincing mosaic" that points directly to discrimination. I agree with Defendant that Plaintiff's termination is best viewed in the context of a mini-RIF (reduction-in-force) because it is undisputed that Plaintiff's duties were absorbed

by another employee rather than eliminated. Under the mini-RIF framework, an employee claiming discrimination must demonstrate that: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate performance expectations; 3) she suffered an adverse employment action; and 4) her duties were absorbed by employees not in the protected class. *Merilat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006). Plaintiff cannot make this showing because she admits that other African-American employees absorbed her former duties.

Based on the foregoing, Defendant's motion for summary judgment on Plaintiff's race discrimination is granted with respect to her claims based on unequal workload and employment termination and denied with respect to her claim for pay disparity.

B. Retaliation

Plaintiff raises retaliation claims under Title VII and the FMLA. In order to make a *prima facie* case of retaliation, Plaintiff must demonstrate (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by Defendant; and 3) a causal connection between the two.[5] *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010); *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999).

The parties do not dispute that Plaintiff has met the first two-prongs. The question is whether she can demonstrate a causal link. As for the Title VII retaliation claim, Plaintiff argues she has met the causal showing by presenting of evidence of a close temporal connection between her September 23, 2008 EEOC complaint and her November 17, 2008 termination, as well as ambiguous comments made by Kerry and Reynolds during and directly proceeding her firing. I disagree. As for the temporal sequence, the Seventh Circuit has "repeatedly stated that a two-month gap between protected activity and an adverse job action is too long to support a

---

[5] Race-based retaliation can also be proven under *McDonnell Douglas* but Plaintiff does not attempt this because there are no similarly situated co-workers for purposes of the retaliation claim.

claim of retaliation absent other evidence." *Jones v. A.W. Holdings*, No. 11-2403, slip op. at 5 (7th Cir. June 20, 2012).

The other evidence Plaintiff points to is uncompelling. Even if I were to find Kerry's "will this go away" question or Reynolds's alleged grin were enough to satisfy the causation prong, Plaintiff cannot show that Defendant's non-discriminatory reason for terminating her employment—budgetary concerns—is pretextual. Most of Plaintiff's arguments—Defendant did not tell her about budgetary concerns; Defendant invested in operations outside of the catering department after her termination; the number of catering events increased between April and November 2008—are either irrelevant or invite this court to sit as a "super-personnel department," which I decline to do. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001). Plaintiff's argument that Ortiz told her in June 2008 that her position had been budgeted for in the new fiscal year is not only based on hearsay but it is probative of nothing. It was Reynolds, not Ortiz, who made the decision to fire Plaintiff—Ortiz's understanding of the budgetary outlook may not have lined up with his. Even if it did, however, budgetary decisions are frequently subject to last-minute changes which courts are in a poor position to second guess. Further, Ortiz did state that Comanse's position was not budgeted for, which suggests that as early as June 2008 there were anticipated shortfalls in terms of funding the catering department. In the end, Plaintiff cannot overcome the fact that her and Comanse's positions were permanently eliminated, which is strong evidence that Defendant's budgetary explanation is not pretextual.

There is absolutely no evidence in the record to support Plaintiff's FMLA retaliation claim. Whether Reynolds wrongfully asked Plaintiff to work from home during her FMLA leave is not particularly probative and, regardless, as explained above, Plaintiff cannot show

pretext.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED with respect to Plaintiff's claim of discriminatory pay disparity and GRANTED with respect to all other claims.

ENTER:

James B. Zagel
United States District Judge

DATE: October 30, 2012